**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SWANSON GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 05-170C |
| v. | ) | consolidated with 05-171C |
| | ) | (Judge Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

In its cross motion for summary judgment, the Government again demonstrates that this Court does not possess jurisdiction over plaintiff's claim for relief based on the Rescissions Act. Plaintiff improperly raised this claim for the first time in its motion for summary judgment totally failing to exhaust the administrative remedy that is a jurisdictional pre-requisite to any claim raised in this Court. Nothing in plaintiff's motion or opposition establishes otherwise thereby rendering the substance of plaintiff's argument moot.

ARGUMENT

I. The Rescissions Act Claim Is Based On Operative Facts Not Raised In A Certified Claim Nor Pled In The Complaint

The Court cannot enter summary judgment in favor of the plaintiff on a claim that was not raised in a certified claim and was not pled in plaintiff's complaint.

A. Arguments Raised in Certified Claim and Complaint

In the certified claim letter and in the complaint filed to begin this action, plaintiff alleged that the Government's breach was its failure to discharge its responsibilities under the Endangered Species Act before executing the Whitecap contract. P. App. 95, 105. Plaintiff describes at length what is required by the

Secretaries of Agriculture & Interior, Record of Decision for Amendments to Forest Service and Bureau of Land Management Planning Documents Within the Range of the Northern Spotted Owl (April 1994) ("ROD"), the Northwest Forest Plan ("NWFP"), the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA"), and concludes that the Government failed to conduct adequate studies and surveys for endangered species before it advertised and signed the Whitecap contract. P. App. 96-99. Because the Government failed to conduct adequate surveys, or failed to search for particular species, according to plaintiff, the Biological Opinion underlying the Whitecap contract was found to be arbitrary and capricious and could not be used to support continuing with the Whitecap contract. P. App. 105. Therefore the contract was suspended which constituted a breach of the Government's duty not to hinder plaintiff's ability to complete performance. See Complaint ¶ 18. Indeed, in the complaint, plaintiff specifically alleged, "At all times relevant to this case, the Forest Service was obligated to ensure that its actions, including the sale of the Whitecap contract, did not violate the Endangered Species Act. . . ." Id.[1]

B. Claim Raised in Motion for Summary Judgment

By contrast, in the motion for summary judgment, plaintiff argues for the first time that the Whitecap contract was signed under the Rescissions Act. The Rescissions Act, according to plaintiff, relieved the Government of its obligations to

[1] This is essentially the same claim as plaintiff raised in the Benchmark case which was consolidated on plaintiff's motion that the two cases raised identical claims. See Plaintiff's Motion to Consolidate, Document Number 12, Case No. 05-171; and Complaint, Document Number 1, Case No. 05-170.

comply with some Federal environmental laws, and furthermore, stated that any contract executed under authority of the Rescissions Act could only be challenged for a period of 15 days after its signing and not, in any event, to meet environmental concerns. See Plaintiff's Proposed Finding of Uncontroverted Fact ("PPFUF") ¶¶ 17, 19- 20. Thus, plaintiff argues, the Government breached the Whitecap contract by suspending it in response to the district court's injunction invalidating a group of Biological Opinions.[2] PPFUF ¶ 29. Plaintiff's argument continues that the Government should have realized that the PCFFA injunction was not a valid basis for suspending the Whitecap contract because it should have realized that environmental considerations did not affect the contract.

An essential element of plaintiff's claim is establishing that the Whitecap contract was signed under the authority of the Rescissions Act. This requires a factual predicate not alleged in Swanson's certified claim letter, and not alleged in the complaint in this action, but included in plaintiff's proposed findings of uncontroverted fact. PPFUF ¶¶ 19, 20.

Plaintiff's claim that the Rescissions Act is merely a new legal theory applied to the same operative facts previously alleged is belied by the fact that plaintiff is not making this argument in the Benchmark case. Up to the time plaintiff filed its summary judgment motion, plaintiff alleged that the Benchmark and Whitecap cases were identical. A side-by-side comparison of the complaints filed in the cases reveals that the facts alleged and claims raised are substantially similar, if not

[2] Pacific Coast Federation of Fishermen's Ass'ns v. National Marine Fisheries Service, No. C00-1757R. ("PCFFA").

identical.[3] If the Rescissions Act claim were merely a legal theory that applied to the operative facts previously alleged, the theory should apply equally to both cases. But it does not because plaintiff must allege additional facts in the Whitecap case, to wit, that Whitecap was signed under the authority of the Rescissions Act, and that no challenge was brought to it. Not only does this change the factual basis of plaintiff's case, it leads to an argument that is totally inconsistent with the claims raised in the certified claim letter and the complaint, and which are still being alleged in the Benchmark case. P. App. 93-111.

II. Plaintiff's Claim For Damages Relies On The Rescissions Act

Plaintiff argues that its claim for damages does not arise under the Rescissions Act, but is instead a claim under the Contract Disputes Act. It is difficult to see how this argument advances plaintiff's case in any way. Even if the actual source of the right to damages is found in the CDA, plaintiff still needs a theory to recover them. Here, plaintiff relies on the Rescissions Act and alleges, as a matter of fact, that the Whitecap contract was signed under the authority of the Rescissions Act, entitling Swanson to damages for the Government's breach of contract. Whether this leaves the plaintiff claiming damages "under" the Rescissions Act or "under" the CDA *because* of the Rescissions Act is a distinction that makes no difference.

---

[3] See dockets for 05-170C, Document 1 and 05-171C, Document 1.

III. Plaintiff Cannot Improve Its Litigating Position By Improperly Pleading Its Case

At no time has plaintiff asserted that it alleged any facts concerning whether the Whitecap contract was signed under the authority of the Rescissions Act in order to refute the Government's jurisdictional claim. It has raised procedural objections to the claim, and it has argued that the facts originally alleged can support the Rescissions Act claim. But it is undisputed that the facts set out in paragraphs 19 and 20 of plaintiff's proposed findings were not alleged before plaintiff filed the motion for summary judgment.

The Government first moved to dismiss plaintiff's motion for summary judgment on the ground that the Court lacked jurisdiction to hear the only claim raised in the motion. Plaintiff objected arguing that it was improper as a technical matter of pleading to file a motion to dismiss a motion for summary judgment. Whereupon the Government filed a cross-motion for summary judgment in which it again pointed out that the Court did not possess jurisdiction to consider plaintiff's claim because plaintiff did not raise this claim either in a certified claim to the contracting officer or in the complaint. Plaintiff's response was to say that jurisdiction is not a proper subject to raise on summary judgment. Plaintiff understandably wants to prevent the Court from actually considering the merits of the Government's claim on jurisdiction, but plaintiff cannot insulate its claim from the Court's lack of jurisdiction by raising it improperly. This issue was procedurally orphaned only because plaintiff raised it for the first time in the motion for summary judgment. Had plaintiff raised this claim in the complaint, the Government would have responded to

the complaint with a motion to dismiss that claim in accordance with RCFC 12(b)(1). As it is, the Government moved to dismiss this claim at its first opportunity, and plaintiff cannot prejudice the Government's ability to raise subject matter jurisdiction by inartful pleading, or through technical objections. It is well established that subject matter jurisdiction may be raised at any time in the course of a proceeding. See e.g. Aleman Food Services, Inc. v. United States, 24 Cl. Ct. 345, 347 (1991).

## CONCLUSION

For these reasons, the United States respectfully requests that the Court dismiss for lack of jurisdiction Swanson's motion for summary judgment on the Whitecap timber sales contract.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-0341
Attorneys for Defendant

OF COUNSEL:

John Munson
Associate Regional Attorney
USDA-OGC, Pacific Region
1734 Federal Building
1220 S.W. Third Avenue
Portland, Oregon 97204-2825

Dated August 22, 2006

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this _22_nd day of August, 2006, I caused to be delivered copies of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

___/s/ Joan M. Stentiford_____
JOAN M. STENTIFORD