# In the United States Court of Federal Claims

Case Nos. 05-170C & 05-171C
FOR PUBLICATION
Filed: March 26, 2007

* * * * * * * * * * * * * * * * * * * * * *

**THE SWANSON GROUP, INC.,**

*Plaintiff,*

v.

**THE UNITED STATES,**

*Defendant.*

* * * * * * * * * * * * * * * * * * * * * *

Motion for Summary Judgment; Rescissions Act, Pub. L. No. 104-19; Claims presented to Contracting Officer; Contract Disputes Act, 41 U.S.C. § 601, *et seq.*; Endangered Species Act,16 U.S.C. § 1531, *et seq.*

*Gary G. Stevens*, Saltman & Stevens, P.C., Washington, D.C., with whom were *Richard W. Goeken* and *Alan I. Saltman*, Saltman & Stevens, for Plaintiff.

*Joan M. Stentiford*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice with whom were *Peter D. Keisler,* Assistant Attorney General, *David M. Cohen*, Director, *Kathryn A. Bleeker*, Assistant Director, *John Munson*, Associate Regional Attorney, USDA-OGC, Pacific Region, of counsel, for Defendant.

## OPINION and ORDER[1]

**SMITH**, Senior Judge:

## INTRODUCTION

Plaintiff claims the suspension of a timber cutting contract was a contractual breach. The contract covered timber in the Umpqua National Forests in Oregon. Plaintiff brings suit under the

---

[1] These cases are also indirectly related to the consolidated action, *CLR Timber Holdings, Inc. v. United States*, No. 04-501C; *Blue Lake Forest Products, Inc. v. United States*, 01-570C; and *Timber Products Co. v. United States*, No. 01-627C, presently before Judge Mary Ellen Coster Williams.

Contract Disputes Act 41 U.S.C. §§ 601-13 (2006) ("CDA"), charging that this suspension was contrary to the Rescissions Act and thus, was a material breach of the contract by Defendant. Defendant's position is that this Court lacks jurisdiction because Plaintiff raised its Rescissions Act claim for the first time in its motion for summary judgment. More specifically, in its cross motion for summary judgment, Defendant contends that Plaintiff's failure to plead its Rescissions Act claim either before the contracting officer or in its complaint leaves this Court without jurisdiction to hear its claim. *Defendant's Motion to Dismiss ("D. Mot. Dismiss")* at 5; and *Defendant's Cross-Motion for Summary Judgment ("D. Cross Mot. S. J.")* at 4-6.

After oral argument and careful consideration, and for the reasons set forth below, the Court hereby **GRANTS** Plaintiff's motion for summary judgment on the issue of liability in Case No. 05-171C, **DENIES** Defendant's motion to dismiss, and **DENIES AS MOOT** Defendant's cross-motion for summary judgment.

## FACTS

To protect natural wildlife, specifically the spotted owl, the Secretaries of the Interior and Agriculture executed a Record of Decision ("ROD") limiting timber sales in national forests. The ROD was prepared and adopted against a backdrop of litigation. The litigation included three region-wide injunctions that had, for several years, severely restricted new timber sales programs in federal forests within the range of the northern spotted owl. To address the negative effects of this restriction while still protecting the northern spotted owl, the Secretaries adopted Option 9 which, in part, provided for a steady supply of lumber. To implement Option 9 Congress passed the Rescissions Act, Pub. L. No. 104-19, and directed the United States Forest Service, Department of Agriculture ("Defendant") to offer contracts for timber sales on federal lands accordingly. The Rescissions Act provided that for their life-span, these contracts would not be subject to any environmental or natural resource laws, specifically listing the Endangered Species Act, 16 U.S.C. § 1531, *et seq.* Pub. L. No. 104-19.

The Umpqua National Forests are included within the 19 National Forests affected by the "Record of Decision for Amendments to Forest Service and Bureau of Land Management Planning Documents Within the Range of the Northern Spotted Owl" ("ROD"). *P. App. to Mot. S. J.* at 16. The ROD covered 24 million acres of federal land. *Id.* at 1-21. The Secretaries jointly accepted Option 9 of a range of alternatives. *Id.* at 5. Option 9 placed approximately 78% of the federal land within the range of the northern spotted owl entirely off-limits to traditional commercial timber harvest. *Id.* at 6. Another goal of Option 9 was to "provide for a steady supply of timber sales and non-timber resources that can be sustained over the long term without degrading the health of the forest or other environmental resources." *Id.* Responding to concerns from Congress that Option 9 was not being fulfilled, President Clinton signed Public Law 104-19, known as the Rescissions Act. Section 2001(d) of the Rescissions Act provides:

> (d) DIRECTION TO COMPLETE TIMBER SALES ON LANDS COVERED BY OPTION 9 - Notwithstanding any other law (including a law under the authority of which any judicial order may be outstanding on or after the date of the enactment of this Act), the Secretary concerned shall expeditiously prepare, offer and award timber sale contracts on Federal lands described in [ROD].

Pub. L. No. 104-19. Moreover, Section (i) of the Rescissions Act provides that whatever environmental documents, if any, prepared by Defendant for timber sales offered under authority of the Rescissions Act "shall be deemed to satisfy the requirements of all applicable Federal environmental and natural resource law." *Id.* In addition, the Rescission Act further mandates that any legal challenge to timber sales offered on lands covered by Option 9, other than under federal environmental and natural resource management laws, must be filed in the district court where the subject federal lands are located within 15 days of the advertisement of sale. *Id.* Although Defendant's ability to offer timber sales under the provisions of the Rescissions Act expired on December 31, 1996, the Act provided that its terms and conditions "shall continue in effect with respect to . . . timber sales contracts offered under subsection (d) until the completion of performance of the contracts." *Id.*

On September 20, 1996, Defendant advertised a contract to harvest a specific area of timber within the Umpqua National Forest in Oregon. The advertisement expressly provided that the contract for sale (the "Whitecap contract") was subject to P.L. 104-19 §2001, the "Rescissions Act." *Appendix to Plaintiff's Motion for Summary Judgment in Case No. 05-171C.*[2] *("P. App. to Mot. S. J.")* at 50. The Rescissions Act exempted, *inter alia*, certain timber sales contracts, including the Whitecap contract, from compliance with federal environmental and natural resource management laws and regulations including the Endangered Species Act ("ESA"). *Id.* at 50. The Rescissions Act further provides a 15-day period of judicial review to determine compliance with any other (non-environmental) laws; such a 15-day period begins on the day the contract is first advertised. *Id.* at 7. The Whitecap contract also included a provision allowing for the delay of performance to comply with an order of a court of "competent jurisdiction." However, the contract itself did not mention application of the Rescissions Act to the Whitecap timber sale. On December 22, 2000, Defendant suspended the Plaintiff's contract pursuant to an order issued under the ESA. *Id.* at 81.

Plaintiff, (Swanson Group then known as Superior Lumber Co.) submitted a sealed bid for the Whitecap timber sales contract and was awarded the Whitecap timber sales contract on October 31, 1996. *Id.* at 55. Pursuant to the terms of the Whitecap timber sales contract, Defendant agreed to sell and permit Swanson to cut and remove 14,658 hundred cubic feet of timber identified in the contract. *Id.* at 50.

In December 2000, the District Court for the Western District of Washington enjoined the

---

[2] Plaintiff's motion for partial summary judgment relates to the complaint filed in Case No. 05-171C ("Whitecap")only.

operation of 20 Biological Opinions of the National Marine Fisheries Service under the ESA, some of which assessed the effect of timber sales on a species of salmon. *Plaintiff's Motion for Summary Judgment in Case No. 05-171C* (*"P. Mot. S. J."*) at *7*. As a result, Defendant suspended all timber sales contracts in the areas covered by the Opinions, including the Whitecap contract. *Id.* at 8; *P. App. to Mot. S. J.* at 81. For all practical purposes the contract remained suspended from December 2000 to March 2004, save a very brief period when the suspension was lifted due to a ruling removing the particular species of salmon from the ESA, a ruling which was quickly stayed by the 9th Circuit. *P. App. To Mot. S. J.* at 84. The dispute over the exclusion of the salmon from the ESA was resolved in 2004 when the 9th Circuit lifted its stay. *P. Mot. S. J.* at 9. Thus, in March 2004, the contracting officer for the Whitecap timber sale confirmed that the Whitecap timber sales contract be released from its suspension and advised Plaintiff that its operations could proceed on the Whitecap timber sale. *P. App. to Mot. S. J.* at 90. The contract was also extended by the length of the suspension to allow for full performance. *Id.* at 91. Plaintiff resumed performance. *P. Mot. S. J.* at 12. However, Plaintiff advised the contracting officer that because of the contract suspension, it incurred damages and unanticipated additional costs and the suspension constituted a material breach of contract. The contracting officer did not issue a final decision on Plaintiff's claim within either 60 days, the statutory period under § 605(c)(1) of the CDA, or within the period the contracting officer had informed Plaintiff she would issue a decision. *Complaint* at ¶ 12.

Thereafter, Plaintiff filed suit, under the CDA, arguing that the suspension was improper and constituted a material breach of the Whitecap contract. *Id.* at ¶¶ 5, 28-31. After filing its complaint, Plaintiff then filed a motion for summary judgment in Case No. 05-171C maintaining that the Rescissions Act removed any requirement that the contract sale comply with any environmental or resource management statute or regulation. *P. Mot. S. J.* at 11. Thus, Plaintiff contends that there was no justification for the suspension of the Whitecap timber sales contract in order to comply with the ESA and such suspension was both contrary to the Rescissions Act and constituted a material breach of contract by Defendant. *Id.* at 13-14. Further, any and all challenges under other laws were required to be in the jurisdiction of the district court where the timber sale took place. In this case, the Whitecap contract forest is in Oregon, and Defendant suspended the Whitecap contract in order to comply with an injunction from a Washington district court. Plaintiff alleges that because the Washington district court was not a "court of competent jurisdiction," there was also no ground to suspend the contract and, therefore, the suspension was a breach of the contract.

In response, Defendant filed a motion to dismiss for lack of subject matter jurisdiction. Defendant asserts that the Plaintiff cannot raise the Rescissions Act claim for the first time in its motion for summary judgment. *D. Mot. Dismiss* at 5,7. Defendant further argues that Plaintiff failed to put the contracting officer on notice that the Rescissions Act applied to the Whitecap contract because it did not raise this claim before the contracting officer and/or plead the claim in its complaint. This, Defendant claims, is a failure on Plaintiff's part to exhaust the remedy provided under the Contract Disputes Act ("CDA"), 41 U.S.C. § 601, *et sec.*, thereby depriving this Court of jurisdiction to hear Plaintiff's claim. *Id.* Thus, Defendant requests that the Court dismiss Plaintiff's motion for summary judgment for lack of jurisdiction. *Id.* at 10.

Defendant also alleges that Plaintiff's position here (that there was no need to comply with

environmental laws) is inconsistent with Plaintiff's position before the contracting officer that the service should have performed a more detailed survey of the area. Therefore, it would not be possible for the contracting officer to know the Plaintiff's theory of the case before this Court. Further, Defendant also asserts that the facts needed to establish the two claims are different. Defendant claims this further supports its jurisdictional argument. Defendant also maintains that because Plaintiff was aware of the Rescission Act claim in 1998 and failed to raise it to the contracting officer, it cannot do so here.

Plaintiff's reply is that, as a matter of law, the Rescissions Act removed Defendant's obligation to comply with the ESA and, therefore, Defendant's suspension of the Whitecap contract to comply with the ESA constituted a breach of contract. *Plaintiff's Response to Defendant's Motion to Dismiss ("P. Resp. D. Mot. Dismiss")* at 5. Additionally, Plaintiff argues that Defendant's motion for dismiss was an improper response to Plaintiff's motion for summary judgment based on RCFC 12(b)(1) and RCFC 7(a). *Id.* at 1-4. Thereafter, Defendant filed its cross-motion for summary judgment reiterating its arguments contained in its motion to dismiss, that being that Plaintiff cannot raise the Rescissions Act claim for the first time in its motion for summary judgment.

## DISCUSSION

### I. Jurisdiction

Defendant contends that this Court does not possess jurisdiction to entertain Plaintiff's claim for liability under the Rescissions Act because Plaintiff's basis for recovery was neither submitted to the contracting officer in a certified claim pursuant to the Contract Disputes Act nor raised in the complaint. *D. Cross Mot. S. J.* at 1. Plaintiff asserts, however, that the basis for relief has consistently been that Defendant's suspension of the Whitecap timber sale from December 2000 to March 2004 breached the terms of that contract. Plaintiff asserts that at no time has it argued that it is attempting to recover damages under the Rescissions Act. Rather, Plaintiff's argument with regard to the Rescissions Act is that the Act, as a matter of law, removed Defendant's obligation to comply with the ESA and, therefore, the protracted suspension of the Whitecap timber sales contract to comply with the ESA breached Defendant's contractual duties to cooperate with, and not hinder, Swanson's harvest of timber under the contract. *P. Mot. S. J.* at 12*; P. Resp. Mot. Dismiss* at 5. Plaintiff asserts that this claim is the same claim that is present in its claim letter and complaint. *P. Resp. Mot. Dismiss* at 5-6. Because proper jurisdiction is a prerequisite to any action, the Court will begin with this inquiry.

In order to maintain an action pursuant to the CDA, a plaintiff must first certify and submit its claims to a contracting officer for a final decision. *See* 41 U.S.C. § 605(a). After obtaining the contracting officer's final decision an action may then be filed in this Court. *See* 41 U.S.C. § 609(a)(3). In addition, it has been held that such action "may not raise any new claims not presented and certified to the contracting officer." *Croman Corp. v. United States*, 44 Fed. Cl. 796, 800 (1999). Thus, it is clear that it is a jurisdictional requirement that a contractor must "submit in writing to the contracting officer a clear. . . statement that gives the contracting officer adequate notice of the basis and amount of the claim" and that "the contractor may not raise any new claims

not presented and certified to the contracting officer." *Id.*

Here, Defendant argues that Plaintiff's Rescissions Act claim is a "new claim" that does not arise out of the same set of operative facts. *D. Cross-Mot. S. J.* at 5-6. Defendant contends the agency did not issue final judgment on Plaintiff's Rescissions Act claim and, therefore, this Court does not have jurisdiction to hear Plaintiff's Rescissions Act claim. *Defendant's Reply Brief* at 8 (citing *Spirit Leveling Contractors v. United States*, 19 Ct. Cl. 84, 89-90 (1989) ("[C]ontractor claims against the government must be presented in writing to the contracting officer for the court to maintain proper jurisdiction to dispose of the matter. . . .without a certified written claim, the court lacks jurisdiction to consider a cause of action."). Further, Defendant asserts, in its motion for summary judgment, Plaintiff is alleging new facts by asserting that the Rescissions Act applies to the Whitecap contract and that no legal challenge was filed within the 15-day time period allotted. *D. Cross-Mot. S. J*. at 7. Defendant contends that this "runs afoul of the requirement that all facts relied on to establish a claim in this Court for breach of contract must first have been presented to the contracting officer." *Id.*

Plaintiff counters that it has consistently maintained its argument that Defendant breached its contract. Plaintiff asserts that it is not asking for relief under the Rescissions Act, but the CDA.[3] As evidence of such, in its claim letter to the contracting officer, Plaintiff stated: "This claim is for damages incurred by Swanson as a direct result of Defendant's suspension of the Whitecap timber sale contract, which constituted a material breach of the contract." *P. App. S. J*. at 93. Additionally, Plaintiff asserted in its claim letter that "[t]he Forest Service's suspension of performance constituted a breach of its implied duties to cooperate and not to hinder our performance and a breach of the Whitecap timber sale contract." *Id.* at 95.

It is clear after reading *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365-66 (Fed. Cir. 2003), a factually similar case asserting the same argument, that this Court does have jurisdiction. In *Scott Timber*, the Federal Circuit held that although Plaintiff "posed slightly different legal theories for [its] breach" of contract claim, it sought the same remedy from the trial court, and thus the claim was essentially the same as that presented to the contracting officer. *Scott Timber Co.*, 333 F.3d at 1365-66. The Court further held that Plaintiff's claims "would not 'subvert the statutory purpose of requiring contractors first to submit their claims to the [contracting officer]' to allow the [contracting officer] to receive and pass judgment on the contractor's entire claim." *Id.* at 1366 (citing *Croman*, 44 Fed. Cl. at 801-02). Clearly, Defendant is a government agency that is obligated to follow the Rescissions Act and apply it correctly to sales, such as the Whitecap timber sales contract. On this issue, it is clear to the Court that the contracting officer is required to be aware of the applicable laws of the United States, such as, the Rescissions Act. Even assuming that the contracting officer was unaware of the Rescissions Act, the advertisement for the Whitecap timber sale plainly provides, "This timber sale is governed by section 2001 of Public Law 104-19." *P. App. to Mot. S. J.* at 50. The Court finds this explicit statement in the advertisement of the applicability

---

[3] This argument is consistent with Plaintiff's argument that it need not plead the Rescissions Act in its complaint as Plaintiff is seeking relief under the CDA not the Rescissions Act.

of the Rescissions Act to the Whitecap timber sale was sufficient to put the contracting officer on notice. *Cf. Erie Coal & Coke Corp. v. United* States, 266 U.S. 518, 520 (1925) ("The terms and conditions of the sale as set forth in the advertisement were binding alike upon the United States and the bidders.")). Thus, it cannot be said that the "scheme of adjudication proscribed by the CDA was undermined by the contractor's claim on appeal." *Cerberonics Inc. v. United States*, 13 Cl. Ct. 415, 417-18 (1987). The instant case is also not one where Plaintiff has raised a new claim. The actual basis for the claim, namely, that the suspension of the Whitecap contract for environmental reasons was invalid, was submitted to the contracting officer. Plaintiff does not change the essence of its claim, it merely "augments the legal theories underlying its claim." *Cerberonics*, at 419. Defendant is not prejudiced by plaintiff raising these theories. As a result, there is no jurisdictional bar to considering Plaintiff's alternative theories.

And finally, Plaintiff's claim never received a final judgment by the contracting officer. Based on this fact, Court finds it would be unwarranted by the facts and the law to require the Plaintiff to re-file its claim before the contracting officer merely to include the words "Rescissions Act," which arises out of the same operative set of facts as its original claim. It would indeed be bizarre if the federal government could prevail on a jurisdictional challenge because of its own purported ignorance of federal law!

For the reasons set forth above, the Court, therefore, finds it has jurisdiction over Plaintiff's claim and now turns its attention to the parties' motions for partial summary judgment.

## II. Summary Judgment

A motion for summary judgment will be granted when no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If no such issue exists the moving party is entitled to judgment as a matter of law. *Id.* at 322-24. When parties file cross-motions for summary judgment, "summary judgment in favor of either party is not proper if disputes remain as to material fact." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). When such a dispute remains, the Court must deny summary judgment.

As stated earlier, in September 1996, Defendant placed an advertisement soliciting bids for the Whitecap timber sales contract that stated that the Rescissions Act would apply. *P. App. to Mot. S. J.* at 50. The advertisement further explained that the Rescissions Act provided that any legal challenge to a timber contract governed by the Rescissions Act must be filed within 15 days of its advertisement. *Id.* at 7, 50. No such challenge was ever filed. *Id.* at 7. On the date bidding on the Whitecap timber sales contract opened, Plaintiff submitted a bid and was awarded the Whitecap timber sales contract. *Id.*

Then, in December 2000, the District Court for the Western District of Washington enjoined the operation of 20 Biological Opinions pursuant to the ESA, one of which affected the Whitecap timber sale. *P. Mot. S. J.* at 7; *P. App. to Mot. S. J.* at 81. With the exception of a six-day time period during which the suspension was lifted, the Whitecap timber sales contract remained suspended from December 2000 until March 2004. *P. App. to Mot. S. J.* at 84. The dispute related

to the Opinions which had sparked suspension of the Whitecap timber sales contract. These were resolved in March 2004. *P. Mot. S. J.* at 9. That day the contracting officer sent Plaintiff notice that operations could proceed on the Whitecap timber sales contract and that the contract had been extended by the length of the suspension. In moving forward with the contract, Plaintiff expressly refused to relinquish its claim that the suspension had been a breach of the contract. *P. App. to Mot. S. J.* at 91, *P. Mot. S. J.* at 12. Plaintiff seeks to recover damages under traditional contract theory, alleging that the Rescissions Act was a term of the Whitecap timber sales contract. Plaintiff argues that because Defendant's suspension of the Whitecap timber sales contract, in order to comply with the ESA, was a violation of the Rescissions Act, such action also constitutes a material breach of contract on Defendant's part. The Rescissions Act argument is merely that the Act relieved the Whitecap timber sales contract from having to comply with the ESA and, therefore, as a matter of law there was no ground for the suspension of the contract. *Id.* The further implication of this was the risk of any suspension was placed upon the government, not the party that was in full compliance with the law and the contract terms. *See, e.g., United States v. Winstar Corp.*, 518 U.S. 839, 870 (1996) ("When the law. . . changed. . . the Government was unable to perform its promise and, therefore, became liable for breach."); *Winstar Corp. v. United States*, 64 F.3d 1531, 1551 (1995).

It is clear to the Court that the advertisement for the Whitecap timber sales contract explicitly provided for the application of Section 2001 of Public Law No. 104-19, the Rescissions Act. *P. App. to Mot. S. J.* at 50. Section 2001 set out that Defendant was to offer timber sales on Option 9 covered lands "notwithstanding" any environmental and natural resource laws for the life of the contract. Section 2001 of the Rescissions Act specifically names the ESA as a Federal Law which "preparation, advertisement, offering, awarding, and operation of . . . any timber sale under subsection (d) shall be deemed to satisfy." Pub. L. No. 104-19. The Court is persuaded that the notice of the applicability of the Rescissions Act in the advertisement was sufficient to make its application a term of the Whitecap timber sales contract. *Cf. Erie Coal & Coke Corp.*, 266 U.S. at 520 (1925) ("The terms and conditions of the sale as set forth in the advertisement were binding alike upon the United States and the bidders."). Therefore, this Court finds that Defendant's suspension of the Whitecap timber sales contract pursuant to the ESA order constituted a material breach of the Whitecap timber sales contract.[4] *See Winstar*, 518 U.S. at 870 (1996); *Winstar*, 64 F.3d at 1551.

## CONCLUSION

After review, the Court finds that the contracting officer was on notice of the application of the Rescissions Act to the Whitecap timber sales contract and this Court, therefore, has jurisdiction to hear Plaintiff's claim. Further, the Court finds that application of the Rescissions Act was clearly advertised as a term of the Whitecap timber sales contract, though not explicitly stated in the

[4] Because Court finds that the Rescissions Act was a term of the Whitecap timber sales contract, it does not need to address Plaintiff's argument that suspension of the Whitecap timber sales contract was improper due to the fact that the Washington district court was not a "court of competent jurisdiction."

contract documents. Suspension of performance on the Whitecap timber sales contract was consequently a breach of that contract and Plaintiff is entitled to relief. Therefore, the Court hereby **DENIES** Defendant's motion to dismiss for lack of subject matter jurisdiction. The Court hereby **GRANTS** Plaintiff's motion for partial summary judgment and, in light of this, the Court **DENIES AS MOOT** Defendant's cross-motion for summary judgment. The Court hereby **SCHEDULES** a telephone status conference for **Tuesday, April 24, 2007, at 11:00 a.m. EDT** to discuss the remaining issues in this litigation.

**It is so ORDERED.**

s/Loren A. Smith
LOREN A. SMITH,
SENIOR JUDGE